**SOUTH HILLS HEALTH SYSTEM, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KIEFER), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 2001.

Decided Sept. 12, 2002.

Michael D. Sherman, Pittsburgh, for petitioner.

Gary E. Wiezcorek, Pittsburgh, for respondent.

BEFORE: DOYLE, Senior Judge,[1] COLINS, President Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge DOYLE.

South Hills Health System (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed an order of a Workers' Compensation Judge (WCJ) and denied Employer's petition to modify the compensation benefits of Joan Kiefer (Claimant).

Claimant worked for Employer as a part-time registered nurse conducting home health care visits when, on October 8, 1996, she sustained a soft tissue injury to her right knee. Employer issued a notice of compensation payable pursuant to which Claimant began to receive workers' compensation benefits. On May 7, 1997, Employer served Claimant with a "Notice of Ability to Return to Work," Bureau Form LIBC–757, informing Claimant that Employer's medical expert, Dr. Eugene Christian, M.D., had released her

---

1. This case was assigned prior to the date that President Judge Doyle assumed the status of senior judge on January 1, 2002.

to perform sedentary work. Then, three months later, on August 6, 1997, Employer filed a petition to modify Claimant's benefits asserting that, "based upon expert opinion evidence" and Claimant's "residual productive skill, education, age and work experience[,]" she was capable of obtaining gainful employment in the area of her residence. Claimant denied the allegations in Employer's petition, and the matter was assigned to a WCJ for hearing and disposition.

The facts as found by the WCJ can be summarized as follows. After sustaining her injury on October 8, 1996 and undergoing treatment with a number of physicians, Claimant returned to employment with Employer in December of 1996, working a limited duty job, until March of 1997. She was informed by Dr. Robert Weiss in February of 1997 that she was in need of surgery and Dr. Christian then examined Claimant and performed that surgery on her right knee on March 18, 1997. When Claimant inquired about coming back to work with Employer after her surgery, she was informed by Employer that it no longer had limited duty jobs available. On April 25, 1997, Dr. Christian indicated in a treatment note that, although Claimant was still experiencing discomfort, he believed that she was ready to perform light-duty work. However, the light-duty position[2] Claimant held with Employer before her surgery was no longer available.

Employer's Personnel Manager, Sharon Gabriel, sent Claimant a letter on April 29, 1997, notifying Claimant that Employer had placed Claimant in "interim placement," which would provide Claimant with preferential bidding rights on job postings of available positions with Employer. Ms. Gabriel would send these job postings to Claimant every week. However, Ms. Gabriel was not familiar with the nature of Claimant's injury, and, although she was aware that Claimant had certain limitations on her ability to work, she did not know whether Claimant was cleared to perform sedentary, light or medium work. Employer continuously (May through October 1997) sent Claimant notices concerning various open positions with Employer, but Claimant did not apply for any of them. No one had ever consulted Ms. Gabriel, however, concerning whether any of the job vacancies that she had forwarded to Claimant were jobs that Claimant was actually capable of performing, nor did Ms. Gabriel herself know whether Claimant had been medically cleared to perform these listed positions. As already mentioned, on May 7, 1997, Employer sent Claimant a Bureau LIBC Form–757, "Notice of Ability to Return to Work." On November 1, 1997, approximately six months after Employer sent this notice to Claimant and began to send her job notices, Employer terminated Claimant from its employment.

Employer also engaged the services of Donna Kulick, Ph.D., a certified disability management specialist employed by Genex Services at the time that she interviewed Claimant. Dr. Kulick sought to determine Claimant's transferable skills considering Claimant's work release, work history and vocational level. Dr. Kulick found several positions at various Pittsburgh-area hospitals that she opined Claimant was qualified for and was capable of performing; these

---

**2.** Claimant described her duties when she started this job in quality assurance for the hospital as "reviewing [hospital] charts, peer review charts," where she "had to carry a lot of material, books, magazines, papers to be copied [to] another area ... walking ... maybe a block and a half three times a day." (Notes of Testimony, N.T., Hearing of October 15, 1997, at 22). When this work resulted in a "very swollen" knee and "a lot of pain," she was assigned to do peer reviews in "one little office." (N.T., 10/15/97 hearing, at 22–23).

jobs included director of nursing services, director of volunteer services, and hospital admissions clerk.[3] **However, none of these positions were open and available at the time Dr. Kulick conducted her evaluation of Claimant in May 1997.** Additionally, Dr. Kulick concluded that two other businesses had positions that were within Claimant's capabilities, *viz.,* Travel Agents International and Lenscrafters. Neither of those businesses had open and available positions as of May 1997.

Additionally, Dr. Kulick concluded that, based upon a labor market survey she performed, Claimant was capable of earning between $100 and $200 per week for a part-time position. She did not know whether Employer itself had any available positions that Claimant could have performed and she did not review the newspaper ads, or contact the Department of Labor and Industry to determine whether there were any job listings or lists of open positions. Rather, Dr. Kulick compiled information from the above-noted potential employers concerning the job positions and whether such positions "existed," and, although all of the positions "existed," no potential employer had such a position open and available at the time Dr. Kulick's report was written in May of 1997. In other words, these positions "existed" because there were people performing the work, but none of these positions were open and available to Claimant.

Claimant's witness, Barbara Graham, a certified disability management specialist,

opined that Claimant was capable of performing several jobs, including an admissions clerk position at the University of Pittsburgh Medical Center. However, Ms. Graham concluded that, although Claimant was physically capable of performing some of the jobs cited by Dr. Kulick, none of those jobs were open and available at the time of Dr. Kulick's evaluation in May of 1997. Additionally, Ms. Graham's testimony indicates that Claimant lacked the necessary training for the Lenscrafters and Travel Agents International positions, and, therefore, she was not qualified for them.

Claimant testified that she did receive the job notices Employer had sent to her, and, moreover, she attempted unsuccessfully to find suitable work on her own. She testified that she continues to look for employment, but does not believe she can work on a full-time basis.

Employer raises the following issues on appeal: first, whether the WCJ, as affirmed by the Board, erred in concluding that Employer failed to establish that it had offered Claimant a specific job that she was capable of performing, in accordance with Section 306(b)(2) of the Workers' Compensation Act (Act),[4] 77 P.S. § 512(2); and, second, whether the WCJ, as affirmed by the Board, erred in denying Employer's petition for modification of benefits based upon the "earning power" assessment of Claimant's own vocational expert, who opined that Claimant had an earning capacity for part-time employment as of June 30, 1998.[5]

---

3. These positions had various titles, but were all related to hospital admissions at the following hospitals: University of Pittsburgh Medical Center, Mercy Hospital, and Allegheny General Hospital.

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626. Section 306(b)(2) was most recently amended by the

Act of June 25, 1996, P.L. 350, commonly known as Act 57.

5. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Beth-*

Section 306(b)(2) of the Act now provides, in part, as follows:

**Schedule of compensation for disability partial in character**

. . . .

(2) **"Earning power"** shall be determined by the work the employe is capable of performing and **shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area.** Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment **which exists** in the usual employment area in which the employe lives within this Commonwealth. . . . **If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe.**

77 P.S. § 512(2) (emphasis added). Additionally, regulations promulgated by the Department of Labor and Industry pursuant to Section 306(b)(2) provide the following:

(a) For claims for injuries suffered on or after June 24, 1996, if a specific job vacancy exists within the usual employment area within this Commonwealth

with the liable employer, which the employee is capable of performing, the employer shall offer that job to the employee prior to seeking a modification or suspension of benefits based on earning power.

(b) The employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice to the employee required by section 306(b)(3) [6] [Form LIBC–757] of the act . . . and shall continue for 30 days or until the filing of a Petition for Modification or Suspension, whichever is longer.

34 Pa.Code § 123.301 (footnote added).

Thus, in order to prevail in seeking a modification of benefits, an employer must either: (1) offer to a claimant a specific job that it has available, which the claimant is capable of performing, or (2) establish "earning power" through expert opinion evidence including job listings with employment agencies, agencies of the Department of Labor and Industry, and advertisements in a claimant's usual area of employment.

Distilled to its essence, the issue before this Court is one of first impression: whether Act 57, which amended the Workers' Compensation Act on June 25, 1996, permits an employer to establish a claimant's "earning power," and, hence, prove partial disability, without establishing proof that there is an actual open and

*energy Mines, Inc.,*) 684 A.2d 673 (Pa.Cmwlth. 1996).

**6.** Section 306(b)(3) of the Act, 77 P.S. § 512(3), provides as follows:

If the insurer receives medical evidence that the claimant is able to return to work **in any capacity,** then the insurer must provide prompt written notice, on a form prescribed by the department [Form LIBC–757], to the claimant, which states all of the following:

(i) The nature of the employe's physical condition or change of condition.
(ii) That the employe has an obligation to look for available employment.
(iii) **That proof of *available* employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.**
(iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.
(Emphasis added).

available job that the claimant is able to perform. In sum, does an employer continue to have the burden to demonstrate an open and available job that the claimant is capable of performing in order to establish that the claimant's benefits should be modified to partial disability, as had been the law prior to Act 57, as established by *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 104 A.2d 104 (1954), and the scores of legal precedent that followed. *See, e.g., Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987); *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968); *Rettinger v. Workmen's Compensation Appeal Board (American Can Co.)*, 103 Pa.Cmwlth.595, 520 A.2d 1252 (1987); *Livingston v. Workmen's Compensation Appeal Board (Upper Yoder Township)*, 67 Pa.Cmwlth.497, 447 A.2d 715 (1982).

### *I. Specific Job Offer*

Employer first argues that it satisfied the requirement of Section 306(b)(2) because it had made a *specific* job offer to Claimant within Claimant's capabilities. Of course, an employer's duty under this section is limited to offering a claimant a specific job **with the employer,** if such a job exists. In this case, Employer sent its Section 306(b)(3) Form LIBC–757 notice to Claimant on May 7, 1997. Therefore, in accord with the Department's above-quoted regulations, Employer had a duty to offer a specific open and available job to Claimant from that date until August 6, 1997, the date on which it filed its modification petition. The WCJ determined that, within that period of time, although Employer did send the Claimant a plethora of *job notices*, Employer failed to satisfy its burden under the Act and the regulations noted above because: (1) Employer only sent **notices** of job postings with Employer for which Claimant would receive preferential bidding rights, rather than an **offer** of a specific job, and (2) Employer offered absolutely no evidence whatsoever, by an expert's opinion or otherwise, in support of its position that those job openings constituted work that Claimant was capable of performing.

■ Employer contends that the changes to the Act under Act 57 contemplated an easing of the Act's previous requirements as established by *Kachinski.* Employer argues that, under the new provisions, an employer need only submit to a claimant job listings with the employer for work that a claimant can perform, and that employers need no longer offer a specific job to a claimant. While in some respects the *Kachinski* requirements were changed by Act 57, we disagree that the provision of Section 306(b)(2), which provides that, "[i]f the employer has a **specific** job vacancy [which] the employee is capable of performing, the employer shall offer such job to the employe," is anything other than the *Kachinski* standard that an "employer must ... produce evidence of a referral ... to a then open job ... which fits in the occupational category for which the claimant has been given medical clearance...." *Kachinski*, 516 Pa. at 252, 532 A.2d at 380. Therefore, we hold that, if the open position is with the employer, the employer must establish that the claimant is capable of performing the work and that **it offered that specific job to the claimant.**

In *Hoover v. Workers' Compensation Appeal Board (Harris Masonry, Inc.)*, 783 A.2d 886 (Pa.Cmwlth.2001), this Court addressed an employer's argument that the requirements of *Kachinski* were no longer applicable to work-related injuries occurring after the effective date of Act 57. Our Court clearly stated the following:

In *Kachinski* it was held that an employer need not specify every aspect of every proposed job, but it did have to

provide medical evidence describing the claimant's capabilities, vocational evidence classifying the level of exertion and a basic description of the job in question. **The Court deems the *Kachinski* standards to apply to job offers that are required to be made by an employer under the new provisions of Section 306(b)(2).**

*Id.* at 890 (emphasis added).

■ In accordance with *Hoover*, an employer who has an available job, which it asserts the claimant can perform, must offer that job to the claimant. And, when an employer seeks modification of benefits based on an offer of a specific job, the employer retains the duty to evaluate the job offering in light of a claimant's particular physical, intellectual and vocational limitations as required under *Kachinski.*

■ In the present case, Employer's Personnel Manager, Ms. Gabriel, admitted that her practice in seeking to place employee-claimants was not to consider a claimant's physical limitations before sending the job listings, but, rather, her practice was to forward *all* job postings to individuals who were in Employer's "interim placement" category, a category which would include workers' compensation claimants who had been released for limit-

ed work, and to wait until a claimant submitted a bid for a particular job vacancy. This Court agrees with the WCJ's conclusion, which the Board affirmed, that an employer cannot satisfy the requirements of Section 306(b)(2) by merely sending job "listings" to a claimant without any reference to a claimant's ability to perform the work. In this case, Employer never made an actual offer of a specific job, but instead sent Claimant jobs "listings" for positions for which Claimant could apply.[7] That approach does not satisfy the requirements of *Kachinski,* which, as discussed above, is still applicable in situations where an employer seeks a modification of benefits based on an offer of a specific job with the employer. *Hoover.* And, as before, that job must be within Claimant's capabilities to perform.

### II. Earning Power

Employer next asserts that the Board erred in affirming the WCJ's conclusion that Claimant's earning power was not established because Claimant's own expert, Ms. Graham, testified that certain positions within Claimant's capabilities were open and available when *that* expert conducted her job survey in June of 1998. This survey came approximately one year after Employer's expert, Dr. Kulick, sub-

---

7. We quote, without further comment, the following finding of the WCJ:

> The testimony of Ms. Gabriel is completely lacking in persuasiveness and credibility that the employer actually attempted to offer the claimant a specific job vacancy within her capabilities. Rather, the employer attempted to shift the burden to the claimant to attempt to determine which positions possibly met her capabilities. Ms. Gabriel acknowledged that she did not know the claimant's physical capabilities. The program demonstrates no more than a sham attempt to meet the provisions of the Workers' Compensation Act regarding the obligation to offer the claimant a specific job vacancy. The arrangement whereby Ms.

> Gabriel had no knowledge of claimant's job restrictions, but yet she was the employer's representative to place the claimant on "interim placement status" and send the claimant job postings at the employer for six months shows a lack of good faith by the employer. That bad faith of the employer connotes that the employer did not attempt to comply with either the letter or the spirit of the Workers' Compensation Act to offer claimant a specific job vacancy; rather, the evidence establishes that the employer had a program to avoid the provisions of the Workers' Compensation Act.

> (WCJ's Decision, Finding of Fact No. 11(e), at 16).

mitted her report on employment that existed in May of 1997.

Because Act 57 modified the language of the Act as it relates to earning power, this Court must first consider the specific language of Section 306(b)(2), which, to reiterate, provides as follows:

Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment **which exists** in the usual employment area in which the employe lives within this Commonwealth.

77 P.S. § 512(2) (emphasis added).

Employer asserts in its brief that the reference in Act 57 to "existing jobs" indicates the General Assembly's intent that employers need no longer submit evidence of jobs that are actually open and available in order to establish a claimant's earning power.[8]

■ However, this Court agrees with the conclusion of the WCJ and the Board that the reference in the Act to "existing jobs" means jobs that not only "exist" but "exist" in reality and are open and available to a claimant. The plain language of Act 57 indicates that earning power is to be determined by: (1) the work an employee is capable of performing (in partial disability cases, consideration must be given to the employee's residual productive skill, education, age and work experience) **and** (2) expert opinion evidence including **job listings,** with agencies of the department, private job placement agencies, and advertisements in the usual employment area.

Although the General Assembly, in adopting Act 57, apparently intended to alter the burden placed previously upon employers seeking modification of benefits, this Court cannot agree with Employer that the amendment contemplates that employers may establish earning power through evidence of positions that do "exist" but which are unavailable to a claimant because someone else is working in those positions. Such a view would defeat the very purpose of the Act. By its listing of sources of positions (*i.e.,* "agencies of the department, private job placement agencies and advertisements in the usual employment area," 77 P.S. § 512(2)), it is evident that the General Assembly intended the concept of the term "existing" to mean positions that are available, because it is not likely that those sources would list positions that are not open and available. If the General Assembly had intended the term "existing" to mean job classifications and positions which "exist" in the workplace in the abstract, but are filled by other people in the workforce, it could

---

**8.** We also note Employer's argument that the WCJ erred with regard to his ruling on one of Claimant's objections at the hearing. During the hearing before the WCJ, Claimant objected to Dr. Kulick's testimony because Dr. Kulick offered no opinion testimony regarding the availability or vacancy of the positions that she testified were within Claimant's capabilities. The WCJ overruled those objections, concluding that the issue of whether or not such positions were vacant became immaterial after the Act 57 amendments. However, after making that ruling, the WCJ concluded otherwise in his opinion, by stating that earning power cannot be established if a job is not vacant at the time of the assessment. Employer asserts that, if it had known that the WCJ would make a ruling that an actual vacancy is an essential component of the earning power determination, it would have sought to introduce such evidence. However, Employer did not raise this issue in its petition for review or in its statement of questions involved, and, therefore, we must consider the issue waived. Pa. R.A.P. 2116; *Borda Construction v. Workers' Compensation Appeal Board (Borda),* 689 A.2d 1005 (Pa.Cmwlth. 1997).

easily have so stated. We therefore conclude that the General Assembly could not have intended an employer's burden to be so limited. An injured employee is "disabled" because that employee cannot perform his or her preinjury job, and that employee's disability is not removed because someone else is working in a job that the claimant can perform, but cannot obtain because it is unavailable; succinctly stated, it does not "exist" for that employee.

Additionally, had the legislature meant to include under the term "existing" filled or unavailable positions, it could have included other sources of employment information such as employer job classifications from private employers or vocational counselors familiar with employment *possibilities* in the usual area of employment. The Court's interpretation is further supported by the language of Section 306(b)(3) of the Act,[9] which provides that, if "the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice ... to the claimant, which states ... (iii) [t]hat proof of *available* **employment opportunities** may jeopardize the employe's right to receipt of ongoing benefits...." 77 P.S. § 512(3) (emphasis added). This language suggests that the predecessor Act's former notion of availability is still alive, and indicates that an employer may challenge a claimant's benefits if it can establish that a claimant has failed to take advantage of "available" employment opportunities. We believe that this provision, though procedural on its face, reflects the legislative intent to retain the Act's previous requirement of actual availability in making an earning power determination.

In light of the language of Act 57, we conclude that the WCJ, as affirmed by the Board, did not err in his interpretation of the Act's earning power provision. Where an employer does not offer a specific job to a claimant, and seeks modification based on earning power by the use of a certified vocational expert, that expert must base a determination of earning power on positions that are actually available. With this interpretation in mind, we will proceed to consider the issue of whether Claimant's earning power was established through the proffered testimony of her own witness, Ms. Graham.

In Finding of Fact No. 11 of his decision, which finding is captioned "Resolution of the *conflict of evidence and discussion,*" the WCJ found as follows:

(a) Addressing the employer's argument that Ms. Graham opined that the UPMC [University of Pittsburgh Medical Center] part-time position of patient verification interviewer was [the] basis for earning power, that argument establishes that claimant's own expert, Ms. Graham, confirmed that the position was within claimant's sedentary work classification. (See Employer's exhibit L. p. 5 and Graham deposition exhibit # 2) Ms. Graham clearly opined in her July 20, 1998 report that the position of patient verification interviewer would be appropriate to claimant's skills and physical capabilities, and that 4 openings were available as of June 30, 1998 at UPMC. She opined that claimant had earning power up to 40 hours per week based on a weekly wage of $413.60. She concluded that claimant would qualify for a weekly wage of $10.34 per hour. Therefore, Ms. Graham's opinion establishes that the patient verification interviewer was not available as of 1997 when Dr. Kulick surveyed the position. **However,**

9. *See note 6, supra.*

**Ms. Graham's opinion establishes an earning power at that position of $413.60 per week as of June 30, 1998.** *However, even that earning power opinion is not believable in view of claimant applying for those positions as of June, 1998, and not receiving any responses.*

(b) Even though there is evidence of earning power as of June 30, 1998, employer failed to prove that it is entitled to establish that earning power.

(Emphasis added).

The WCJ's opinion thus indicates that he believed Claimant's testimony that she applied for the position of patient verification interviewer at the University of Pittsburgh Medical Center and received no response to her application, and, therefore, he rejected Ms. Graham's testimony that those jobs were available. Thus, the WCJ determined that the positions were not available in June of 1998 based upon Claimant's credible testimony and this Court will not disturb the WCJ's factual findings when those facts are supported by substantial evidence. *See generally Morey.* Of course, the WCJ's credibility determinations are binding on this Court. *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.),* 161 Pa.Cmwlth.497, 637 A.2d 711 (1994).

The issue that we do not reach today, with regard to employment opportunities other than with employer, that remains to be answered is whether a claimant must receive an actual **offer** of employment in order to establish earning power. As indicated above, the Act requires only a showing of earning power based upon expert testimony concerning existing, and available, positions that a claimant is capable of performing "considering the employe's residual productive skill, education, age and work experience. . . ." Section 306(b)(2), 77 P.S. § 512(2). Although we have conclud-

ed that such "existing" positions must be available at the time an expert conducts a job survey, the Act contains no clear indication that a claimant actually receive an offer of employment in order to establish his or her earning power. In this appeal, however, because the WCJ found that the evidence did not establish that the subject positions were even open and available, we need not reach this issue. The order of the Board is affirmed.

### ORDER

**NOW,** this 12th day of September, 2002, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.