**Michael EDWARDS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MPW INDUSTRIAL SERVICES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 2004.

Decided Aug. 24, 2004.

Reargument Denied Oct. 21, 2004.

Thomas D. Hall, Pittsburgh, for petitioner.

James L. Welsh, III, Turtle Creek for respondent.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Michael Edwards (claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge's (WCJ) decision suspending claimant's workers' compensation benefits. We affirm.

On March 25, 1998, the claimant was lifting piping over a rail, when his arm and elbow caught between the rail and the pipe, causing a contusion to his elbow and an injury to his left arm. The claimant was then entitled to a total disability compensation rate of $190.20 a week based on his average weekly wage of $211.33. On September 28, 2001, employer, MPW Industrial Services, Inc. filed a petition to suspend benefits as of August 29, 2001. The petition averred that work was generally available as claimant had been released to modified duty. A Labor Market Survey determined that claimant could earn between $230 to $280 per week. It was also stated that there were no positions available with the time of injury employer.

To support its petition, employer presented testimony by deposition from Steven E. Kann, M.D., an orthopedic surgeon. Dr. Kann concluded that as of his examination of claimant on March 14, 2001, there was evidence of subluxation of his ulnar nerve and he recommended a repeat nerve study and revision surgery. He also completed a return-to-work form, releasing claimant to modified duty, and allowing him to return to heavy work with no repetitive flexion extension of the left elbow and no lifting greater than fifty pounds with the left arm.

Dr. Kann also testified that he reviewed some of the job analysis and descriptions for three jobs researched by the vocational counselor. He opined that they would be within claimant's capabilities, with the understanding that each job could be modified to meet claimant's limitations. Even in the absence of surgery, he found no medical reason why claimant could not perform these jobs.

Employer also presented the testimony of its area manager, Ron Wells, who testified by deposition that around August 29, 2001, employer did not have any work available for claimant because he was fired for a violation of company policy. He also stated that the only positions available required activities outside the claimant's limitations.

Finally, employer presented the deposition testimony of Robert W. Boyer, a vocational case manager to testify as an expert in the area of Labor Market Surveys and Earning Power Assessments. He testified that although he never had a face to face meeting with the claimant, he performed an earning power evaluation. Utilizing claimant's educational background, training, past employment and Dr. Kann's report to identify appropriate jobs for the claimant, Boyer contacted seventy-two employers within the claimant's usual employment area. He then performed an on-site analysis at three of the positions. He testified that a housekeeping position and two cook positions were available full time and paid at least minimum wage. Boyer also testified that before performing the assessment, he contacted employer at the time of injury and was informed there were no physically appropriate positions available.

In the WCJ's findings of fact he specifically accepted as credible, persuasive and convincing the testimonies of all three of these witnesses and specifically rejected the testimonies to the contrary by the claimant and Dr. Sotereanos, the claimant's doctor.

The claimant raises multiple issues on appeal: (1) whether substantial evidence supports the finding that employer had no jobs available within claimant's capabilities; (2) whether the WCJ relied on inadmissible hearsay to determine the availability, hours and wages of specified jobs evaluated by the vocational expert; (3) whether substantial evidence supports the determination of claimant's earning power; and (4) whether Dr. Kann's testimony is unequivocal.

Section 306(a.2) of the Workers Compensation Act [1], added by Section 4 of the Act of June 24, 1996, P.L. 350 (Act 57), provides that, "Disability partial in character shall apply if the employee is able to perform his previous work or can, considering the employee's residual productive skill, education, age and work experience, engage in any other kind of gainful employment which exists in the usual employment area in which the employee lives within the Commonwealth." 77 P.S. § 511.2. In order for an employer to pre-

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4; 2501–2626.

vail in seeking a suspension of benefits, under Act 57, an employer must either: "(1) offer to a claimant a specific job that it has available, which the claimant is capable of performing, or (2) establish 'earning power' through expert opinion evidence including job listings with employment agencies, agencies of the Department of Labor and Industry and advertisements in a claimant's usual area of employment." *South Hills Health Sys. v. Workers' Comp. Appeal Bd. (Kiefer)*, 806 A.2d 962, 966 (Pa.Cmwlth.2002).

Section 123.301 of Title 34 of the Pennsylvania Administrative Code explains the employer's job offer obligation and the ways in which this obligation may be satisfied. "For claims or injuries suffered on or after June 24, 1996, if a specific job vacancy exists within the usual employment area within this Commonwealth with the liable employer, which the employee is capable of performing, the employer shall offer that job to the employee prior to seeking a modification or suspension of benefits based on earning power." 34 Pa. Code § 123.301(a). Subsection (c)(4) states that if, "No job vacancy exists within the usual employment area," the employer's duty may be satisfied. 34 Pa. Code § 123.301(c)(4).

In the present case, the WCJ specifically accepted as credible the testimony of Ron Wells, who stated that the positions available within the company were only that of laborers and drivers. Both jobs, as testified to by Wells, involved lifting up to eighty pounds, which would be in excess of claimant's lifting restriction. The testimony by Wells established that there were no available positions which met the claimant's limitations, and therefore no positions that employer was obliged to offer claimant. There is no merit, therefore, in claimant's contention that employer improperly refused to offer an available job.

There is also no merit in claimant's argument that the WCJ relied upon inadmissible hearsay testimony by Robert Boyer, employer's vocational counselor, in support of his findings concerning the availability, hours and wages of particular jobs. Boyer's expert opinion testimony was not hearsay. Rule 703 of the Pennsylvania Rules of Evidence provides as follows:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Pa. R.E. 703. As permitted under Rule 703, Boyer, an expert in the area of Labor Market Surveys and Earning Power Assessments, properly based his opinion regarding available jobs on the information he received from Dr. Kann's assessment of claimant's capabilities and limitations, on claimant's education and work experience, and on information he obtained regarding particular jobs. This is precisely the kind of third party information that Rule 703 contemplates is an acceptable foundation for expert opinion testimony. Boyer's opinion testimony satisfies the standard of proof imposed under Act 57 calling for employer to establish earning power by, "expert opinion evidence including job listings, with agencies of the department, private job placement agencies and advertisements in the usual employment area." *South Hills*, 806 A.2d at 968. Although the Rules of Evidence do not strictly apply to workers' compensation proceedings, those proceedings are subject to more re-

laxed, not more stringent, standards. *See* Section 422(a) of the Act, *as amended,* 77 P.S. § 834. *See also Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski),* 570 Pa. 60, 75, 807 A.2d 906, 915 (2002). *Afortiori,* if evidence is admissible under the Pennsylvania Rules, it is admissible in administrative proceedings.

Claimant argues that under *Urueta v. Workmen's Compensation Appeal Board (H. Oritsky, Inc.),* 667 A.2d 32 (Pa. Cmwlth.1995), a vocational expert may not simply relate facts given to him by a potential employer. *Urueta* is inapposite. The vocational expert in *Urueta* testified that according to potential employers the claimant never contacted them about jobs. This was hearsay. However, in the case at bar, Boyer performed an on-site investigation to observe firsthand the duties which would be performed by the claimant and used this information as foundation for his expert opinion.

■ The claimant's argument that the WCJ erred in granting the suspension petition because no jobs were actually offered to the claimant is also without merit. This argument is based on the requirement imposed under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987), that the claimant be offered an actual job. Act 57 eliminated this requirement and under the standard now applicable, employer need only establish claimant's earning power. As previously discussed, earning power may be proven by expert witness testimony as employer did in this case. Although the jobs must be available, "the Act contains no clear indication that a claimant actually receive an offer of employment in order to establish earning power." *South Hills,* 806 A.2d at 971.

■ Lastly, the claimant's argument that Dr. Kann's testimony is equivocal is without merit. Claimant points to Dr. Kann's statements that claimant had subluxation of his ulnar nerve and Kann's recommendation for a nerve study and revision surgery as contradicting his opinion that claimant could return to work. "When determining whether an expert's testimony is equivocal, we must examine the entire testimony as a whole instead of basing our decision upon a fragment of testimony removed from its context." *Manners v. Workmen's Comp. Appeal Bd. (McDonald's Restaurant),* 688 A.2d 786, 788 (Pa.Cmwlth.1997). Taking Dr. Kann's testimony as a whole, we conclude that his statements are not in conflict and although he believed the claimant needed further treatment, including surgery, without the surgery claimant could still be safely released to work, as long as he did not exceed his limitations. Therefore Dr. Kann's testimony is unequivocal and constitutes competent substantial evidence to support the WCJ's findings.

Accordingly, we affirm.

## ORDER

AND NOW, this 24th day of August, 2004, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby AFFIRMED.