PHOENIXVILLE HOSPITAL,
Petitioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (SHOAP),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 5, 2010.

Decided June 30, 2010.

Reargument and Rehearing En Banc
Denied Aug. 18, 2010.

Christopher R. Bridgman, Media, for petitioner.

Jonathan A. Picker, Norristown, for respondent.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Phoenixville Hospital (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying its Modification Petition. We reverse the order of the Board and modify the workers' compensation benefits of Annette Shoap (Claimant) based on an earning power of $347.41 per week.

Claimant sustained an injury in the nature of left shoulder tendonitis in the course and scope of her employment. She began receiving temporary total disability benefits pursuant to a Notice of Compensation Payable dated September 25, 2003. Claimant's injury description was later amended to include a brachial plexopathy of the left arm. On August 9, 2007, Employer filed a Modification Petition alleging that work was generally available to Claimant within her physical restrictions. Employer later amended its petition at hearing to request modification as of August 28, 2007.

Employer submitted the testimony of Andrew Sattel, M.D., board certified in orthopedic surgery, who examined Claimant on May 9, 2007. Following his examination and review of available medical records, Dr. Sattel opined Claimant does have residual loss of function in the left shoulder. He explained, however, that Claimant was capable of returning to sedentary work. Dr. Sattel agreed that following his examination of Claimant, he was provided with some job descriptions from a voca-

tional counselor. All of the positions were within Claimant's physical restrictions.

Employer further presented the testimony of Jeffrey Kimmich, a vocational case manager, who met with Claimant and conducted a vocational interview on April 20, 2007. Mr. Kimmich identified five jobs within Claimant's physical restrictions established by Dr. Sattel that were open and available in Claimant's usual employment area. These positions were:

-*Jani–King Commercial Cleaning* telephone sales representative; $9.00 per hour; 40 hours per week; identified as available on May 21, 2007.

-*Gutter Guard* telephone sales representative; $8.00 to $10.00 per hour; 40 hours per week; identified as available on June 5, 2007.

-*Doubletree Guest Suites* night auditor; $11.00 per hour; identified as available on June 11, 2007.

-*Holiday Inn Express* desk clerk; $9.00 to $10.00 per hour; 40 hours per week; identified as available on July 9, 2007.

-*Progressive Business Publications* customer service representative; $7.15 per hour; 38.75 hours per week.[1]

Reproduced Record, pp. 79a–88a.

Mr. Kimmich prepared a report referencing the first three jobs. The latter two jobs were referenced in a subsequent report. Mr. Kimmich explained Claimant would have an average earning power of approximately $347.41 per week considering these job openings.[2]

Claimant testified that in July of 2007, she received a labor market survey with three positions listed as potential employers, Jani–King Commercial Cleaning, Gutter Guard, and Doubletree Suites. She explained that she filled out an application for each of these businesses on July 30, 2007. According to Claimant, she never was contacted by any of the prospective employers, nor was she offered any position, following her completion of the applications. Claimant added that she received follow up documentation containing information about potentially available positions at Holiday Inn Express and Progressive Business Publications in August of 2007. Claimant made efforts to apply for both of these positions on August 8, 2007. Claimant had a telephone interview with Progressive Business Publications and was told she could not work at the position. Claimant has not looked for work independently.

Claimant presented the testimony of Philip Pearlstein, D.O., board certified in general practice and family medicine, who began treating her in March of 2004. He did not believe Claimant could perform the five jobs listed in the labor market survey issued by Mr. Kimmich. Claimant also presented the testimony of her own vocational expert, Gary Young, who did not believe the jobs identified by Mr. Kimmich, from a vocational perspective, were appropriate for Claimant.

The WCJ issued a decision on August 29, 2008 wherein he credited Dr. Sattel's testimony to the extent he opined Claimant was capable of sedentary duty.[3]

---

1. It does not appear from our review of the record the Mr. Kimmich ever testified when the position at Progressive Business Publications was available.

2. Employer submitted into the record a Notice of Ability to Return to Work.

3. A WCJ is free to credit the testimony of any witness in whole or in part. *Gentex Corp. v. Workers' Compensation Appeal Board (Morack)*, 975 A.2d 1214 (Pa.Cmwlth.2009). Credibility determinations are not reviewable by this Court. *Campbell v. Workers' Compensation Appeal Board (Pittsburgh Post Gazette)*, 954 A.2d 726 (Pa.Cmwlth.2008).

He rejected Dr. Pearlstein's testimony to the extent his opinion was inconsistent with that of Dr. Sattel. The WCJ determined that "the testimony of Jeffery Kimmich that he found five open positions that were compatible with the work restrictions placed on Claimant by Dr. Sattel, vocationally suited for Claimant, and located within the geographical area in which Claimant resides is found to be credible and persuasive and is accepted as fact in this case." Op. dated 8/29/08, p. 4. The WCJ rejected Claimant's vocational expert. Nonetheless, the WCJ credited Claimant's testimony to the extent that she applied to all five jobs that Mr. Kimmich "found for her" and did not receive an offer of employment. *Id.* He found that Claimant "has established that in good-faith, she followed through on all of the jobs referred to her by Employer and that none of the referrals resulted in an offer of employment." Id. at 5. The WCJ denied Employer's

Modification Petition. The Board affirmed. This appeal followed.[4]

Employer argues on appeal that the WCJ erroneously concluded that because Claimant applied for the jobs contained in the labor market surveys in good faith and did not receive an offer of employment that her benefits could not be modified. It contends that in so finding, the WCJ applied the standard enunciated under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), that is not applicable herein. Employer asserts that this matter is to be adjudicated under Section 306(b) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, added by the Act of June 24, 1996, P.L. 350, *as amended,* 77 P.S. § 512.[5]

Before it was amended in 1996, the Act did not delineate standards for employers seeking modification or suspension of benefits.[6] *Riddle v. Workers' Compensation*

---

4. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Gentex Corp.,* 975 A.2d at 1217.

5. Section 306(b) of the Act provides, in relevant part:

> (2) "Earning power" *shall* be determined by the work the employe is capable of performing and *shall* be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character *shall* apply if the employe is able to perform his previous work or *can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth* … If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe.

In order to accurately assess the earning power of the employe, the insurer *may* require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation …
(3) If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:
(i) The nature of the employe's physical condition or change of condition.
*(ii) That the employe has an obligation to look for available employment.*
(iii) That proof of *available* employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
(iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions. (Emphasis added).

6. The group of amendments added to the Act by the Act of June 24, 1996, P.L. 350 are commonly known as Act 57.

*Appeal Board (Allegheny City Elec., Inc.),* 603 Pa. 74, 981 A.2d 1288 (2009). In *Kachinski,* the Supreme Court established the procedure to be followed when attempting to return an injured employee to the workforce.[7] The Supreme Court delineated the parties' respective burdens as follows:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski,* 516 Pa. at 252, 532 A.2d at 380.

This Court has previously explained that the advent of Act 57, particularly the enactment of Section 306(b)(2) of the Act, altered an employer's burden of proof to obtain a modification of benefits. *South Hills Health Sys. v. Workers' Compensation Appeal Board (Kiefer),* 806 A.2d 962 (Pa.Cmwlth.2002). *See also Edwards v. Workers' Compensation Appeal Board (MPW Indus. Serv., Inc.),* 858 A.2d 648 (Pa.Cmwlth.2004)(rejecting a claimant's argument that three jobs testified to as open and available by a vocational expert were insufficient to modify his benefits as there was no offer of employment as that argument was based on the requirements imposed by *Kachinski* ).[8] Indeed, our Supreme Court has spoken on the issue by stating in enacting Act 57, the General Assembly *replaced* the *Kachinski* approach. *Riddle,* 603 Pa. at 81, 981 A.2d at 1292. It added, "by adopting subsection (2) [of Section 306(b) of the Act], the legislature lowered the *Kachinski* burden of proof by allowing an employer to obtain modification or suspension of benefits on evidence of earning power proved through expert testimony rather than by providing evidence that the claimant had obtained employment." *Id.,* 603 Pa. at 83, 981 A.2d at 1293, n. 8.

In *Edwards,* we stated that there is no requirement that the claimant be offered a job under Act 57, and that employer need only establish a claimant's earning power. We concluded that "although the jobs must be available, 'the Act contains no clear indication that a claimant actually receive an offer of employment in order to establish earning power.' " *Edwards,* 858 A.2d at 652 (citing *South Hills,* 806 A.2d at 971). Rather, the jobs must be available at the time an expert conducts a job survey.[9]

---

7. Despite the amendments made to the Act known as Act 57 dealing with earning power assessments, *Kachinski* and its progeny still remain applicable in situations where an employer seeks a modification or suspension of benefits based on an offer of a specific job within its organization. *Allied Prods. and Servs. v. Workers' Compensation Appeal Board (Click),* 823 A.2d 284 (Pa.Cmwlth.2003). This fact is not material to the case before us.

8. This case is distinguishable from the facts in *Edwards.* The employee in *Edwards* never attempted to apply for the positions contained in the earning power assessment. Here, Claimant did apply for all positions contained in the labor market survey(s).

9. In *Melmark Home v. Workers' Compensation Appeal Board (Rosenberg),* 946 A.2d 159 (Pa. Cmwlth.2008), we discussed the fact that when a claimant is served with a Notice of Ability to Return to Work consistent with Section 306(b)(3) of the Act, she has an obligation to look for work. We stated that this document shall be provided to a claimant before

*South Hills,* 806 A.2d at 971. *See also Rebeor v. Workers' Compensation Appeal Board (Eckerd),* 976 A.2d 655 (Pa.Cmwlth.2009)(holding that when an expert conducted an earnings power assessment and located jobs available to claimant, that expert's testimony was competent to support a modification despite the fact that the claimant moved out of state after the completion of the job survey). The sole purpose of Section 306(b) of the Act is to describe the payment schedule for partial disability and provide a formula for calculating an injured employee's benefits. *Riddle,* 603 Pa. at 82, 981 A.2d at 1293. The Supreme Court has acknowledged that the calculation of earning power under Section 306(b) of the Act only approximates a claimant's "true" earning power. *Id.*

Despite the foregoing analysis, Claimant contends Employer is not entitled to modification in this instance. She relies primarily on the *South Hills* case cited above. The employer in *South Hills* employed the services of a disability management specialist, Donna Kulick, Ph.D. Dr. Kulick identified several positions at various businesses that she believed the claimant was qualified for and capable of performing them. None of the positions were open and available at the time of the claimant's evaluation or when the labor market survey was prepared. The positions "existed" because there were people performing the work, but none of the positions were open and available to the claimant. *South Hills,* 806 A.2d at 965. The WCJ denied the modification petition filed by the employer. The Board affirmed.

The employer argued on appeal that the reference to "existing jobs" in Section 302(b) of the Act indicates the General Assembly's intent that employers need no longer submit evidence of jobs that are actually open and available in order to establish a claimant's earning power. We rejected this argument and offered the following analysis:

> [T]his Court agrees with the conclusion of the WCJ and the Board that the reference in the Act to "existing jobs" means jobs that not only "exist" but "exist" in reality and are open and available to a claimant. The plain language of Act 57 indicates that earning power is to be determined by: (1) the work an employee is capable of performing (in partial disability cases, consideration must be given to the employee's residual productive skill, education, age and work experience) *and* (2) expert opinion evidence including *job listings, with agencies of the department, private job placement agencies, and advertisements in the usual employment area.*
>
> Although the General Assembly, in adopting Act 57 apparently intended to alter the burden placed previously upon employers seeking modification of benefits, this Court cannot agree with Employer that the amendment contemplates that employers may establish earning power through evidence of positions that do "exist" but which are unavailable to a claimant because someone else is working in those positions. Such a view would defeat the very purpose of the Act. By its listing of sources of positions *(i.e.,* "agencies of the department, private job placement agencies and advertisements in the usual employment area," *77 P.S. § 512(2)* ), it is evident that the General Assembly intended the concept of the term "existing" to mean positions that are available, because it is not likely that those sources would list positions that are not open

an employer acts on newfound medical information. This affords a claimant with a residual impairment an opportunity to search for employment or to take other legal action. *Id.*

and available. If the General Assembly had intended the term "existing" to mean job classifications and positions which "exist" in the workplace in the abstract, but are filled by other people in the workforce, it could easily have so stated ...

Additionally, had the legislature meant to include under the term "existing" filled or unavailable positions, it could have included other sources of employment information such as employer job classifications from private employers or vocational counselors familiar with employment *possibilities* in the usual area of employment. The Court's interpretation is further supported by the language of Section 306(b)(3) of the Act, which provides that, if "the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice ... to the claimant, which states ... (iii) *that proof of available employment opportunities* may jeopardize the employe's right to receipt of ongoing benefits...." *77 P.S. § 512(3)* (emphasis added). This language suggests that the predecessor Act's former notion of availability is still alive, and indicates that an employer may challenge a claimant's benefits if it can establish that a claimant has failed to take advantage of "available" employment opportunities. We believe that this provision, though procedural on its face, reflects the legislative intent to retain the Act's previous requirement of actual availability in making an earning power determination.

*South Hills,* 806 A.2d at 969–970 (Emphasis in original).

Interestingly, the above discussion appears to be nothing more than dicta.[10] Nonetheless, quite reasonably, *South Hills* has been followed several times for the proposition that the jobs utilized by an employer to show earning power in a post-Act 57 case must be "actually available." *Edwards,* 858 A.2d at 652; *Readinger v. Workers' Compensation Appeal Board (Epler Masonry),* 855 A.2d 952 (Pa. Cmwlth.2004); *Allied Prods.,* 823 A.2d at 287. Although the words in *South Hills* were carefully chosen, it cannot be ignored that the employer in that case never argued that it was entitled to a modification of benefits as of May 1997 when its expert performed an earning power assessment. Rather, it argued that it was entitled to a modification one year later based on the testimony of the claimant's own witness, Barbara Graham, a certified disability management specialist.

In disposing of this issue, we reiterated the finding of the WCJ:

(a) Addressing the employer's argument that Ms. Graham opined that the UPMC [University of Pittsburgh Medical Center] part-time position of patient verification interviewer was [the] basis for earning power; that argument establishes that claimant's own expert, Ms. Graham, confirmed that the position was within claimant's sedentary work classification... Ms. Graham clearly opined in her July 20, 1998 report that the position of patient verification interviewer would be appropriate to claimant's skills and physical capabilities, and that 4 openings were available as of June 30, 1998 at UPMC. She opined that claimant

---

**10.** A statement in a prior opinion that is not decisional is not binding. *Cinram Mfg., Inc. v. Workers' Compensation Appeal Board (Hill),* 601 Pa. 524, 532, 975 A.2d 577, 581 (2009). Findings that are not essential to a judgment, nor material to the adjudication are merely dicta. *Wright v. Workmen's Compensation Appeal Board (Adam's Mark Hotel),* 163 Pa. Cmwlth. 172, 639 A.2d 1347 (1994).

had earning power up to 40 hours per week based on a weekly wage of $ 413.60 . . . Therefore, Ms. Graham's opinion establishes that the patient verification interviewer was not available as of 1997 when Dr. Kulick surveyed the position. *However, Ms. Graham's opinion establishes an earning power at that position of $413.60 per week as of June 30, 1998. However, even that earning power opinion is not believable in view of claimant applying for those positions as of June, 1998, and not receiving any responses.*

(b) Even though there is evidence of earning power as of June 30, 1998, employer failed to prove that it is entitled to establish that earning power.

*South Hills,* 806 A.2d at 970–971 (Emphasis in original).

We indicated that these findings essentially indicated that the WCJ believed the claimant's testimony that she applied for the position of patient verification interviewer and received no response. Thus, we concluded he *rejected* Ms. Graham's testimony that those jobs were available. We rejected the employer's argument based on our unwillingness to disturb the WCJ's *credibility determinations.* We concluded the opinion by stating:

> The issue that we do not reach today, with regard to employment opportunities other than with employer, that remains to be answered is whether a claimant must receive an actual offer of employment in order to establish earning power. As indicated above, the Act requires only a showing of earning power based upon expert testimony concerning existing, and available, positions that a claimant is capable of performing "considering the employe's residual productive skill, education, age and work

experience . . ." Section 306(b)(2), *77 P.S. § 512(2). Although we have concluded that such "existing" positions must be available <u>at the time an expert conducts a job survey,</u> the Act contains* no clear indication that a claimant actually receive an offer of employment in order to establish his or her earning power.

*Id.* at 971 (Emphasis added).

■■ Today we are required to answer the question left open by *South Hills.* We are asked to determine whether a job not only exists, but is available to Claimant for the purposes of Section 306(a) of the Act when she applies for each individual job contained in a labor market survey and does not receive an offer of employment where the employer's expert testimony is credited that the jobs were open and available at the time he identified the employment opportunities. We determine that Employer is not precluded from obtaining a modification of benefits where, as here, Claimant pursued the jobs contained in the labor market survey weeks after they were identified as open and available by Mr. Kimmich.

■ Pursuant to Section 306(b)(3)(ii) of the Act, a claimant has an obligation to begin pursuing employment opportunities upon being supplied with a Notice of Ability to Return to Work. *Melmark Home.* The obligation to look for work commences before, not after, receiving any earning power assessments or labor market surveys by a vocational expert.[11] Mr. Kimmich credibly testified that the position at Jani–King Commercial Cleaning was available as of May 21, 2007. He stated that the Gutter Guard telephone sales representative position was available on June 5, 2007. The Doubletree Guest Suites night auditor position was available on June 11,

---

**11.** No argument is made regarding the timing of the Notice of Ability to Return to Work.

2007. Per Mr. Kimmich, the position at Holiday Inn Express was available as of July 9, 2007. Claimant did not apply for the first three positions, however, until July 31, 2007. She did not pursue the position at Holiday in Express until August 8, 2007.[12] She did not apply for any of the positions located by Mr. Kimmich until after receiving copies of his earning power assessment(s). Moreover, the record indicates Claimant did not actively pursue her own employment following receipt of the Notice of Ability to Return to Work.

██ The documents supplied by Mr. Kimmich are not analogous to job referrals. Job referrals are part of a *Kachinski* type analysis that, with limited exception, is an antiquated standard. Therefore, the WCJ's conclusion that Claimant followed through in "good faith" to apply for the positions identified by Mr. Kimmich and failed to receive a job offer is of no relevance. As explained in *South Hills, Edwards*, and *Riddle*, the enactment of Act 57 and Section 306(b)(2)of the Act altered an employer's burden of proof to obtain a modification of benefits. An employer can obtain a modification of benefits by showing that the claimant can engage in substantial gainful employment in her employment area. *Allied Prods.* It has the option of showing "earning power" through expert opinion evidence including job listings with employment agencies, agencies of the Department of Labor and Industry, and advertisements in a claimant's usual area of employment. That is what Employer did in the instant matter.

██ It is acknowledged, as found by the WCJ, that Claimant did not receive an offer of employment after completing applications for the first three jobs at Jani-King Commercial Cleaning, Gutter Guard, Doubletree Guest Suites, and further pursuing the position at Holiday Inn Express. Claimant pursued each of these positions a month or more after they were identified as open and available by Mr. Kimmich. We reiterate that, per *South Hills* and *Rebeor*, jobs are to be open and available *at the time the employer's expert conducts his earning power assessment.* The jobs contained in any labor market survey are *not* meant to provide an exact calculation of the injured workers' earning power. Rather, they are to provide an approximation of her potential earnings based on her residual capacity and to set a payment schedule for partial disability benefits. *Riddle.*

It is simply unrealistic to presume that all jobs identified in a labor market survey as open and available on a given date will remain open and available nearly a month or more later when a claimant receives a report of a vocational expert and applies for the jobs contained therein. This is particularly true where, as here, the jobs identified are entry level positions where training is provided by the employer. Any prospective employee needs to act quickly when a position becomes available. The converse is also true, however, that with numerous employers located throughout the Commonwealth, similar employment opportunities will regularly become available. Inasmuch as Section 306(b)(2) is meant to provide an approximate value of a claimant's earnings based on her residual capacity, *Riddle*, the fact that Claimant

---

12. We will not consider the position at Progressive Business Publications in conducting our analysis. Claimant *presented definitive, unrebutted testimony* that this position *continued* to be open and available when she pursued employment with this business. She interviewed over the phone and was not offered a job. Consistent with *South Hills,* the job at Progressive Business Publications "existed," but it was not "available" to Claimant.

applied for the jobs identified by Mr. Kimmich and did not obtain an offer of employment is immaterial.[13] Similar employment opportunities will become available that fit within her residual earning capacity that correspond to her "earning power."

■ We note that the WCJ credited Dr. Sattel's testimony that Claimant was capable of sedentary work. We further recognize that the WCJ credited Mr. Kimmich's testimony that he found five open positions that were compatible with the work restrictions placed on Claimant by Dr. Sattel, vocationally suited for Claimant, and located within the geographical area. Credibility determinations are to be made by the WCJ and are not reviewable by this Court. *Morack; Campbell.* Employer is entitled to modification based on the testimony of these individuals. We are cognizant that while Mr. Kimmich opined

Claimant had an earning power of $347.41 per week, we have determined that one of those positions was not "available" to Claimant. Nonetheless, the position at Progressive Business Publications was the lowest paying job identified in the earning power assessment. Its inclusion in averaging Claimant's expected earnings based on her residual capacity is beneficial to her. Moreover, Employer requests modification in the amount of $347.41 per week. Consequently, Claimant's benefits shall be modified based on that monetary figure as of August 28, 2007.

## ORDER

AND NOW, this 30th day of June, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed. Employer is entitled to a modification of Claimant's benefits in the

---

13. Section 123.204 of the Act 57 Regulations states, in relevant part:

(b) A vocational expert who conducts an earning power assessment interview shall generate a written initial report detailing the expert's involvement in the litigation and conclusions from the interview. The initial report need not contain the results or conclusions of any surveys or tests. The vocational expert shall serve a copy of the initial report on the employee and counsel, if known, within 30 days of the date of the interview.

(c) *A vocational expert who authors additional written reports, including earning power assessments or labor market surveys, shall simultaneously serve copies of these written reports upon the employee and counsel, if known, when the expert provides the written reports to the insurer or its counsel.*

(d) A vocational expert who satisfies the requirements of this section complies with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses for purposes of section 306(b)(2) of the act *(77 P.S. § 512(2) ).*

34 Pa.Code § 123.204.

Section 123.204 was adopted June 22, 2007, effective June 23, 2007. 37 Pa.Bull. 2804. (June 23, 2007). Claimant argues that this provision requires a vocational expert to immediately forward any earning power assessments to her in a timely fashion and is further evidence that she may pursue these opportunities and have a defense to modification if no offer of employment is made. As in *Kleinhagan v. Workers' Compensation Appeal Board (KNIF Flexpak Corp.)*, 993 A.2d 1269 (Pa.Cmwlth.2010), a question arises as to whether this provision is to be applied retroactively inasmuch as Claimant was injured in 2003. Regardless, this provision merely requires a vocational expert to share information with Claimant. Aside from the thirty day time period to submit an initial report, there is no set timetable for the vocational expert to complete any earning power assessments. This documentation does provide information to a claimant to assist in preparing defenses to modification. For example, a claimant may investigate whether a position was open and available at the time specified in the earning power assessment. We cannot agree, however, that this regulation permits a claimant to apply for a position after the fact and then utilize a lack of an offer of employment as a defense to a modification.

amount of $347.41 per week as of August 28, 2007.