IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd Nuttall,                                    :
                         Petitioner              :
                                                 :
            v.                                   :
                                                 :
Workers' Compensation Appeal                     :
Board (City of Chester),                         :    No. 1428 C.D. 2019
                         Respondent              :    Submitted: January 17, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED:  May 4, 2020


            Todd Nuttall (Claimant) petitions for review of the September 18, 2019

order of the Workers' Compensation Appeal Board (Board) affirming the decision

and order of Workers' Compensation Judge Bonnie Callahan (WCJ) that granted the

Petition to Suspend Compensation Benefits filed by the City of Chester (Employer)

against Claimant pursuant to the Workers' Compensation Act (Act).[1]  We affirm.

            The pertinent facts of this matter are as follows.  On February 1, 2010,

Claimant, a police officer for Employer, entered Employer's Deferred Retirement

Option Plan (DROP) program, which Employer offers to allow police officers with

at least 20 years of service to continue to work and be paid while also receiving

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

pension benefits.  In brief, while an officer participates in the DROP program, his or her pension benefits are deposited in a trust account to which the officer is entitled at the time of his actual retirement.  This Court previously summarized Employer's DROP program, which is part of Employer's Police Pension Ordinance codified in Article 143 of Employer's Administrative Code, in *Massi v. City of Chester Aggregated Pension Board* (Pa. Cmwlth., No. 1635 C.D. 2017, filed July 17, 2018), wherein the Court explained:

> Section 143.24 of the Ordinance outlines [Employer's] Deferred Retirement Option Plan (DROP) program, which is available to officers with at least 20 years of service. Under this program, an officer who is otherwise entitled to retire may enter the DROP program, continue to work and be paid by Employer while also receiving his pension benefits.  These pension benefits are deposited into a trust account which an officer is then entitled to at the time of his actual retirement.  To participate in the DROP program, officers "shall make an irrevocable commitment to separate from [Employer] service as a police officer and retire upon ceasing participation in the DROP, which they must do no later than five (5) years after entering the DROP."  Ordinance Article 143.24(b).  The Ordinance also provides that "[o]nce entering the DROP, the member continues to be a DROP Participant until separation from [Employer] service as a police officer, at which point the member is deemed retired."  Ordinance Article 143.24(j).

*Id.*, slip op. at 4-5.  Claimant's DROP separation date was January 31, 2015.  2018 WCJ Decision dated July 30, 2018 (2018 WCJ Decision) at 4, Findings of Fact (F.F.) 8(b).

On March 27, 2014, Claimant suffered a work-related crush injury to his right foot that resulted in a resection surgery of the right fifth metatarsal bone and then a left cuboid bone blister from walking with an altered gait following the

2

surgery. *See* 2018 WCJ Decision at 3, F.F. 5. Employer accepted the injury as compensable.[2] *See* 2018 WCJ Decision at 3, F.F. 5; *see also* Board Opinion dated September 18, 2019 (2019 Board Opinion) at 1.

On September 12, 2016, Employer filed a modification petition and a suspension petition, both of which alleged that Claimant has post-injury self-employment earnings for which it was entitled to a credit.[3] *See* 2018 WCJ Decision at 3, F.F. 1; *see also* Modification Petition dated September 12, 2016; Suspension Petition dated September 12, 2016.[4] At an October 11, 2017 hearing on these petitions, Employer amended the petitions to include a claim that Claimant voluntarily withdrew from the workforce as a result of his participation in the DROP program, and a further allegation that it was entitled to a credit regarding its contribution to Claimant's pension fund. *See* 2018 WCJ Decision at 3, F.F. 3; *see also* 2019 Board Opinion at 1-2. The original Modification and Suspension

---

[2] Employer originally accepted the injury as a "crush injury" to Claimant's "right [fifth] proximal phalanx" on which Employer paid 22 weeks of compensation (16 weeks for the loss of the use of the right toe and a further 6 weeks for healing time) for "specific loss of right fifth proximal phalanx. *See* WCJ Decision dated December 21, 2015 (2015 WCJ Decision) at 3, F.F. 1. The injury description was revised as stated above on December 21, 2015, following Claimant's successful Review Petition. *See* 2018 WCJ Decision at 3, F.F. 5; *see also* 2015 WCJ Decision at 10.

[3] Previously, Claimant had filed a Petition for Review seeking a revised description of the injury description and a Penalty Petition alleging Employer had failed to properly mail indemnity checks to Claimant. *See* 2015 WCJ Decision. On December 21, 2015, a workers' compensation judge granted the Petition for Review and dismissed the Penalty Petition. *See id.* at 10. Thereafter, Employer filed a Termination Petition alleging Claimant had fully recovered from his work injury as of February 10, 2016, which a different workers' compensation judge denied and dismissed by decision rendered March 24, 2017. *See* WCJ Decision dated March 24, 2017.

[4] Employer filed another combined Modification/Suspension Petition on December 13, 2016, again alleging its entitlement to a credit based on Claimant's post-injury self-employment. *See* 2018 WCJ Decision at 3, F.F. 2; *see also* Modification/Suspension Petition dated December 13, 2016.

3

Petitions, together with the amended petitions, are referred to collectively herein as the Suspension Petition.[5]

On July 30, 2018, the WCJ issued a decision that determined Employer had met its burden of proving that Claimant had voluntarily withdrawn from the workforce as of his DROP retirement date of January 31, 2015. *See* 2018 WCJ Decision at 8-9, F.F. 16 & Conclusion of Law (C.L.) 3; *see also* 2019 Board Opinion at 2. The WCJ found that, while Claimant did suffer a work injury in 2014, he did not retire in 2015 as a result of this injury. *Id.* Instead, the WCJ specifically found that the evidence established that Claimant retired in January 2015 as a result of his participation in the DROP program. *Id.* Additionally, the WCJ determined that Employer was entitled to a credit for the 28.7% contribution it had made to Claimant's pension fund. *See* 2018 WCJ Decision at 8-9, F.F. 17 & C.L. 4; *see also* 2019 Board Opinion at 2. Accordingly, the WCJ granted the Suspension Petition in part[6] based on Claimant's voluntary withdrawal from the workforce and suspended Claimant's benefits as of January 31, 2015. *See* 2018 WCJ Decision at 10, Order; *see also* 2019 Board Opinion at 2. The WCJ determined the remainder of the claims of the Suspension Petition, including the pension credit, were moot. *Id.* Claimant appealed the WCJ's rulings, and the Board affirmed by opinion dated September 18,

---

[5] Claimant had also filed a Penalty Petition on June 2, 2017, and a Modification Petition on June 22, 2017, both of which were withdrawn at the October 11, 2017 hearing on Employer's Modification and Suspension Petitions. *See* 2018 WCJ Decision at 3, F.F. 4; *see also* Penalty Petition dated June 2, 2017; Modification Petition dated June 22, 2017.

[6] The WCJ determined that Employer had failed to meet its burden of proving an entitlement to a suspension or modification of Claimant's benefits based on income allegedly earned by Claimant from Widener University between the date he began receiving workers' compensation benefits and January 31, 2015. *See* 2018 WCJ Decision at 8, C.L. 2.

4

2019. *See generally* 2019 Board Opinion. Claimant timely petitioned this Court for review.[7]

## Claimant's Retirement from the Workforce

On appeal, Claimant first challenges whether substantial evidence existed to support the WCJ's grant of the Suspension Petition based on his purported retirement. *See* Claimant's Brief at 16-21. Claimant argues that no credible evidence exists to support the conclusion that he voluntarily withdrew from the workforce. *Id.* We do not agree.

Where an employer seeks termination or suspension of benefits based on an employee's retirement, the employer must show by the totality of the circumstances that the employee has chosen not to return to the workforce. *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 67 A.3d 1194, 1208 (Pa. 2013). As our Supreme Court has explained:

> Where the employer challenges the entitlement to continuing compensation on the grounds that the claimant

---

[7] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

> Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

has removed himself or herself from the general workforce by retiring, the employer has the burden of proving that the claimant has voluntarily left the workforce. There is no presumption of retirement arising from the fact that a claimant seeks or accepts a pension . . . rather the worker's acceptance of a pension entitles the employer only to a permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired – the inference must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.

If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power. Conversely, if the employer fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

*Robinson*, 67 A.3d at 1209. An employer may establish an employee's purported retirement by presenting evidence of objective facts of the employee's status, "including the claimant's receipt of a pension, the claimant's own statements relating to voluntary withdrawal from the workforce, and the claimant's efforts or non-efforts to seek employment." *Id.* at 1210. Once the employer establishes that the employee has retired, then the burden shifts to the employee to show that he is still seeking employment within his limitations or was forced to retire from the workforce as a result of his work-related injury. *Day v. Workers' Comp. Appeal Bd. (City of Pittsburgh)*, 6 A.3d 633, 637 (Pa. Cmwlth. 2010).

6

Here, in support of the Suspension Petition, Employer presented the testimony of Danielle Martin, its deputy controller. *See* 2018 WCJ Decision at 3-5, F.F. 8. Martin explained that Employer's DROP program is a completely optional program open to Employer's more tenured police and fire officers that helps Employer plan for those officers' retirements. *See id.* at 3, F.F. 8a. Martin testified that a qualified officer who enters the DROP program is given a five-year date from entrance in the program until a date when the officer will separate from employment with Employer. *See id.* at 3-4, F.F. 8a. Martin explained that upon an officer entering the DROP program, the officer no longer contributes to the pension plan and the officer's pension benefit is calculated and invested on the officer's behalf by Employer. *See id.* at 4, F.F. 8a. Martin explained that the officer receives a payout upon their separation from employment at their five-year separation date, but may separate prior to that date and receive a smaller payout. *Id.* Martin further explained that upon separation an officer may work for another employer and may also apply to work for Employer in a different capacity. *Id.* Martin testified that Claimant entered the DROP program on February 1, 2010, and remained fully employed as an officer until the completion of the program on January 31, 2015, at which time he retired. *See id.* at 4, F.F. 8b. The WCJ found Martin's testimony regarding the DROP program and Claimant's participation therein credible.[8] *See id.* at 7, F.F. 14.

---

[8] Specifically, the WCJ stated:

> This Judge finds the testimony of Danielle Martin credible. Her testimony is credible regarding her understanding of the DROP program. Her testimony is credible that it is a completely optional program; Claimant entered the DROP program on February 1, 2010 and his separation date was January 31, 2015; Claimant retired as of his DROP separation date; and in the eyes of [Employer], because of the DROP program, Claimant is separated from [Employer]. Her testimony is credible regarding the pension fact sheet and spread sheet providing a breakdown of contributions made by Claimant,

To contest the Suspension Petition, Claimant testified on his own behalf before the WCJ. *See* 2018 WCJ Decision at 6-7, F.F. 12. Claimant testified that he began work as a police officer in 1989. *See id.* at 6, F.F. 12b. He testified that he understood the DROP program was optional, and that he entered the program on February 1, 2010, intending to retire on January 31, 2015. *See id.* at 6-7, F.F. 12b & 12d. Claimant explained that he has not reapplied for any work after completing the DROP program. *See id.* at 7, F.F. 12c. He further explained that, while he has applied for disability, he receives a regular pension, as opposed to a disability pension, from Employer. *See id.* at 7, F.F. 12c. The WCJ found Claimant's testimony "credible that he entered the DROP program on February 1, 2010, with a retirement date of January 31, 2015; it was optional to enter the DROP program; and he entered the DROP program on February 1, 2010 with the intention that [Employer] would retire him on January 31, 2015." *Id.* at 8, F.F. 15

Of course, in workers' compensation matters, the WCJ determines the credibility and weight of evidence, and neither the Board nor this Court may overturn those determinations on appeal. *Koszowski v. Workmen's Comp. Appeal Bd. (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991); *see also Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth.), *appeal denied*, 173 A.3d 252 (Pa. 2017) ("Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations.").

---

[Employer], and the state. Her testimony is credible that Claimant currently receives the monthly pension amount of $4,265.66.

2018 WCJ Decision at 7, F.F. 14.

8

Regarding Claimant's withdrawal from the workforce, the WCJ made the following relevant determination:

> This Judge finds, based on the totality of the circumstances, that Claimant voluntarily withdrew from the workforce as of January 31, 2015. In so finding, this Judge notes that Claimant voluntarily entered the DROP program in 2010 and established a retirement date of January 31, 2015. While Claimant sustained a work injury in 2014, Claimant did not retire in 2015 because of the work injury. His testimony and the testimony of Danielle Martin establishes that he retired as of January 31, 2015 because of his participation in the DROP program. Further, while the acceptance of a retirement pension is not in and of itself proof of a voluntary withdrawal, it is a factor that may be considered when deciding if an employee has voluntarily withdrawn from the workforce. This Judge also finds it significant that, when Claimant testified in 2016, he testified he did not feel he was totally disabled [], but when he testified in connection with this litigation, he testified he has not reapplied for any work.

2018 WCJ Decision at 8, F.F. 16.

As a result of the WCJ's credibility determinations, which we must accept, as did the Board,[9] we find that substantial record evidence supports the WCJ's findings of fact, specifically that Claimant voluntarily withdrew from the workforce pursuant to his participation in the DROP program. *See Robinson.* The objective evidence reveals that Claimant had entered the DROP program and was injured during the pendency of the program, but did not retire until his scheduled DROP retirement date of January 31, 2015. The objective evidence also reveals that Claimant was receiving a normal, non-disability pension from Employer.

---

[9] *See* 2019 Board Opinion at 5-6.

Additionally, Claimant previously testified that he did not feel he was totally disabled, but testified in this matter that he was neither working nor had looked or applied for work, despite Martin's credible testimony that the DROP program does not preclude Claimant from seeking employment. These objective facts represent substantial evidence to support the WCJ's determination that Claimant had retired from the workforce and the Board's affirmance thereof. We discern no error in the Board affirming the WCJ's determination regarding Claimant's voluntary retirement from the workforce.

## Credit for Pension Plan Contributions

Claimant also argues on appeal that the WCJ erred by concluding that Employer was entitled to a credit for contributions it made to Claimant's pension fund because Employer failed to put forth substantial evidence of an entitlement to such a credit. *See* Claimant's Brief at 21-27. We disagree.

Section 204(a) of the Act allows employers to take a credit against workers' compensation payments for amounts paid directly by the employer to an employee's pension fund. *See* 77 P.S. § 71(a). An employer seeking to reduce an employee's workers' compensation payments due to a pension offset bears the burden of proving the extent to which it funded the pension plan. *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 602 (Pa. Cmwlth. 2014). An employer may meet this burden of proving the extent it contributed to an employee's pension plan by presenting expert testimony in the form of actuarial testimony. *Dep't of Pub. Welfare v. Workers' Comp. Appeal Bd. (Harvey)*, 993 A.2d 270, 281-82 (Pa. 2010).

Here, Martin testified that Claimant receives a monthly pension benefit from Employer of $4,265.66, and that Claimant contributed a total of $36,524.34 to his pension over the course of his employment. *See* 2018 WCJ Decision at 4, F.F. 8b. The WCJ found this testimony credible. *Id.* at 7, F.F. 14.

Additionally, Employer presented the testimony of Larry Brisman regarding Claimant's pension. *See* 2018 WCJ Decision at 5-6, F.F. 9. Brisman, an enrolled actuary,[10] testified that Employer asked him to produce an actuarial report regarding Employer's contributions to Claimant's pension plan. *Id.* at 5, F.F. 9a. Brisman explained that Claimant's total pension benefit amounts to $51,187.92 annually, with $6,053.48 of that amount being attributable to Claimant's accumulated contributions. *Id.* at 5, F.F. 9b. The remaining $45,134.44 of Claimant's annual pension benefits, Brisman explained, consists of a Commonwealth-provided portion and an Employer-provided portion. *Id.* In summary, Brisman calculated that Employer contributed 28.7% of Claimant's pension benefits, with the Commonwealth contributing 59.5% and Claimant's contributions accounting for the remaining 11.8%. *Id.* at 6, F.F. 9b. Employer's 28.7% contribution represents an annual contribution of $14,705.14, which is unaltered by any delayed contributions to the pension plan. *Id.* at 5-6, F.F. 9b. The WCJ made the following credibility determinations regarding Brisman's testimony:

> This Judge finds Larry Brisman credible. His testimony is credible that he reviewed the documentation provided to him and was able to determine contributions to individual recipients of the pension plan. His testimony is credible that [Employer] contributes $14,705.14 annually to the

---

[10] Brisman testified he is licensed and able to determine liabilities and minimum contribution requirements for pension plans, including municipal pension plans. *See* 2018 WCJ Decision at 5, F.F. 9a.

total pension Claimant receives, or 28.7% of the total. His testimony is credible that delayed contributions to the pension plan would not change his calculation.

2018 WCJ Decision at 7, F.F. 14.

Based on this evidence, the WCJ found as follows regarding Employer's requested credit for contributions to Claimant's pension plan:

This Judge finds [Employer] is entitled to a credit for pension benefits received by Claimant to the extent the pension fund was funded by [Employer]. [Employer], through the credible testimony of Mr. Brisman, met its burden of proving [Employer] contributed 28.7% of the pension benefits.

2018 WCJ Decision at 8, F.F. 17.

We find that substantial evidence supports the WCJ's findings of fact that Employer was entitled to a credit for Employer-funded pension benefits paid to Claimant. The WCJ found the actuarial testimony credible and that it established the extent of Employer's funding of Claimant's pension benefits and, accordingly, Employer's entitlement to a credit therefor. Contrary to Claimant's arguments that Employer's evidence was not credible and based on unreliable figures, the Board accepted these evidentiary credibility and weight determinations,[11] and we must also do the same. *See Koszowski.* Accordingly, we determine no error in the Board's affirmance of the WCJ's determination that Employer is entitled to a credit for contributions it paid to Claimant's pension fund.

To the extent Claimant argues that any right Employer may have had to a credit for its contributions to Claimant's pension fund is barred by the doctrine

---

[11] *See* 2019 Board Opinion at 8.

of laches, *see* Claimant's Brief at 26-27, we note that Claimant raises this issue for the first time in his brief and it is accordingly waived.  *See* Pa.R.A.P. 1551.

For the above reasons, the Board's order is affirmed.


_____
CHRISTINE FIZZANO CANNON, Judge

Todd Nuttall, : 
             Petitioner : 
              : 
       v. : 
              : 
Workers' Compensation Appeal : 
Board (City of Chester), :   No. 1428 C.D. 2019 
             Respondent : 

# O R D E R

AND NOW, this 4th day of May, 2020, the September 18, 2019 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____

CHRISTINE FIZZANO CANNON, Judge