Cliff VAUGHN, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (CARRARA STEEL
ERECTORS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 11, 2011.

Decided March 11, 2011.

Publication Ordered June 3, 2011.

W. John Knox, Erie, for petitioner.

Edward J. Betza, Erie, for respondent Carrara Steel Erectors.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

Cliff Vaughn (Claimant) petitions for review of the August 2, 2010 order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the suspension petition filed by Carrara Steel Erectors (Employer). The sole issue before this Court is whether the

WCAB erred by finding that Employer met its burden of proving sufficient notice to Claimant of an available job under the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm the order of the WCAB.

Claimant, a union ironworker, suffered a back injury on July 23, 2005 while working for Employer. He filed a claim petition and on August 6, 2007, after the matter was litigated, a WCJ granted him workers' compensation indemnity and medical benefits. On January 3, 2008, Claimant underwent an independent medical exam performed by Daniel T. Altman, M.D., an orthopedic surgeon. Based upon his review of Claimant's records and his examination of Claimant, Dr. Altman issued a report stating that Claimant was capable of returning to work in a modified, medium-duty capacity. A Work Capability Chart accompanied Dr. Altman's report and reflected that Claimant could lift and/or carry up to 25 pounds, he could walk/stand for one to four hours in an eight-hour day, sit for five to eight hours and drive for one to three hours. The Chart also indicated that Claimant was able to use his hands for simple grasping, pushing/pulling and fine manipulation. It indicated that he could use his feet for repetitive motion, such as operating foot pedals, and he could occasionally bend, squat, climb, swing a sledge and perform hard physical exertion.

Following its receipt of Dr. Altman's Chart, by letter dated May 14, 2008, Employer, through Patrick S. Carrara (Carrara), notified Claimant as follows:

We are pleased to hear that you are capable of returning to work with some restrictions. Your activities at work will be modified to accommodate the restrictions identified in the 1/3/08 Work Capa-

bility Chart signed by Dr. Altman. A copy of this chart is enclosed.

Please report to Kevin Litz on May 19, 2008 at 7:00 a.m. You will, of course, be paid at your regular rate of pay.

Reproduced Record (R.R.) at 88a. On May 28, 2008, because Claimant failed to report to work, Employer filed a petition to suspend/modify his benefits as of May 19, 2008. Claimant denied Employer's allegations.

Hearings were held before the WCJ on July 3, 2008, December 10, 2008 and February 4, 2009, at which Employer presented the testimony of Carrara and the deposition testimony of Dr. Altman. Carrara has been employed by Employer for approximately 20 years, and is responsible for Employer's workers' compensation claims. He testified that Employer fabricates and erects structural steel and, while the individual employees are generally required to perform heavy construction-type work, when an employee is placed on modified duty Employer will bring them back to work to perform duties in line with their restrictions. He explained that Claimant could "make up bolts," which consists of putting nuts, bolts and washer together for use by men at the work sites, he could "repair chokers," and he could make deliveries to work sites. R.R. at 27a–30a. None of the proposed work would require Claimant to lift more than 10 pounds, and if it turned out that Claimant could not do the work described, Employer would do its best to accommodate him. Carrara stated that Employer remains willing to allow Claimant to return to work in a modified duty capacity at any time.

According to Dr. Altman's testimony, his January 3, 2008 examination of Claimant showed he "was essentially normal, with no motor and sensory deficits .... [and]

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

only ... some decreased range of motion," he was not receiving any therapy, and he was not taking any medications. Altman Notes of Deposition Testimony, January 6, 2009 (Altman N.T.), at 17, 28. Dr. Altman has often performed the laminectomy and decompression procedure Claimant underwent and testified that, in his experience, almost all of his patients are able to return to some sort of work. Dr. Altman agreed with the assessment of Daniel Loesch, M.D., Claimant's neurosurgeon, regarding the size of the disk material removed having an effect on Claimant's ability to work. Accordingly, Dr. Altman stated that Claimant probably could not return to his heavy-duty job as an iron worker, but "he could return to a medium-duty job which often involves lifting 25 pounds." Altman N.T. at 18.

Claimant's evidence consisted of his testimony and the deposition testimony of Dr. Loesch. Claimant acknowledged that he received Employer's May 14, 2008 letter requesting that he report for duty, but stated that, in light of his condition, he was unable to return to work. He explained that he must re-position himself often to avoid back pain, and he uses an inversion table several times per day to alleviate his discomfort. He often awakes in the morning with numbness in his legs, making it difficult for him to dress, and he had good days and bad days as far as his capabilities. As of December of 2008, Claimant was no longer taking medication for his pain, nor was he treating with any physicians. Despite the fact that he has taken numerous car trips, and he carries out the day-to-day maintenance of his home, he expressed fear of reinjuring his back if he returned to work. Claimant testified that he is receiving social security disability and a disability pension, which he would lose if he returned to work.

According to Dr. Loesch's testimony, following the surgical procedure he performed on Claimant, and based upon his examinations, "he shouldn't be allowed to work in [the heavy duty iron worker] environment for fear of hurting himself and/or others." Loesch Notes of Deposition Testimony, December 2, 2008 (Loesch N.T.), at 9. Dr. Loesch further testified that although Claimant can take care of himself, his home and his yard, "with the problems that he deals with and the way they flare and he has good days and bad days, I don't feel he's capable of working any job," regardless of the amount lifted, or the amount of sitting, standing or walking. Loesch N.T. at 20–21, 34–35.

■ On June 24, 2009, the WCJ issued a decision in which she deemed Claimant's testimony credible "except with regard to his ability to return to work." R.R. at 15a. She deemed Carrara's testimony credible, and found the opinions of Dr. Altman more credible than those rendered by Dr. Loesch with regard to Claimant's ability to work. As a result, the WCJ granted Employer's petition to suspend.[2] Claimant appealed to the WCAB, which affirmed the WCJ's opinion on August 2, 2010. Claimant appealed to this Court.[3]

2. The WCJ held that the modification petition was moot and, while Employer was no longer required to pay wage loss benefits to Claimant, Employer remained responsible for reasonable and necessary medical expenses caused by the work injury.

3. "This Court's scope and standard of review of an order of the [WCAB] is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether [WCAB] procedures were violated, whether constitutional rights were violated or an error of law was committed." *World Kitchen, Inc. v. Workers' Comp. Appeal Bd. (Rideout)*, 981 A.2d 342, 346 n. 5 (Pa.Cmwlth.2009).

■ On appeal, Claimant argues that Employer did not meet its burden of proving that the May 14, 2008 letter sufficiently notified him of an available job. We disagree. "Under Section 306(b)(2) of the Act,[4] an employer may seek modification of a claimant's benefits by either offering the claimant a specific job that it has available that he is capable of performing or establishing earning power through expert opinion evidence." *Kleinhagan v. Workers' Comp. Appeal Bd. (KNIF Flexpak Corp.)*, 993 A.2d 1269, 1275 (Pa.Cmwlth. 2010) (quotation marks omitted). Where, as here, an employer seeks modification or suspension of a claimant's benefits based upon the offer of a specific job with the employer, we look to the Pennsylvania Supreme Court's ruling in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), which set forth the guidelines for proving work availability for injured employees as follows:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

516 Pa. at 252, 532 A.2d at 380.[5] Accordingly, Employer must produce evidence of a job referral in Claimant's occupational category before the burden shifts to Claimant. *Cerro Metal Prods. v. Workers' Comp. Appeal Bd. (Shawley)*, 762 A.2d 421 (Pa.Cmwlth.2000).

■ The Pennsylvania Supreme Court has also declared that an employer's job "referral should be reviewed in a common sense manner in order to determine whether a suitable position has been made available to the claimant." *Eidem v. Workers Comp. Appeal Bd. (Gnaden–Huetten Mem'l Hosp.)*, 560 Pa. 439, 445, 746 A.2d 101, 104 (2000). Accordingly, "[w]here the employer is providing referrals to alternative positions-jobs the employee has not been previously employed in-the employer must provide information related to the job duties and classification so that the claimant can make an informed decision regarding whether the position offered is within her capabilities." *Id.*

> [W]here the employer is offering claimant a light duty position in which [he] has previously worked, no job position or duties must be specified.... [T]he employer need not specify a job position or duties since the claimant can 'reasonably assume that he is being offered the same position' that he has previously worked, and thus, is familiar with the requirements of that position.

---

4. Added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 512(2).

5. We recognize that when it amended Section 306(b) of the Act in 1996, the General Assembly appeared to replace the *Kachinski* approach. This Court recently declared, however, that "[d]espite the amendments ... known as Act 57 dealing with earning power assess-ments, *Kachinski* and its progeny still remain applicable in situations where an employer seeks a modification or suspension of benefits based on an offer of a specific job within its organization." *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 2 A.3d 689, 693 n. 7 (Pa.Cmwlth.2010).

*Id.,* 560 Pa. at 445, 746 A.2d at 105 (citations omitted).

The letter in this case refers to Claimant "returning to work," his "activities at work," and his "regular rate of pay," such that Employer clearly intended for Claimant to return to his pre-injury job, rather than to an alternative position. R.R. at 88a. The restrictions set forth in the Work Capability Chart were attached to the letter which contained assurances that they would be accommodated. In fact, Carrara testified that if while working in a modified capacity Claimant finds that he is experiencing difficulty, Employer would make further accommodations as may be necessary. Thus, while the letter does not state specifically what Employer intended for him to do upon his return to work, having been employed in the job in the past, Claimant should be well aware of what portions of his job he could do within his restrictions.

We conclude, therefore, that Employer's May 14, 2008 letter contained sufficient information to enable Claimant to make an informed decision about whether the proposed position was within his capabilities. Thus, we hold that the WCAB did not err by finding that Employer met its burden of proving sufficient notice to Claimant of an available job under the Act. Accordingly, the WCAB's order is affirmed.

Judge McCULLOUGH concurs in the result only.

### ORDER

AND NOW, this 11th day of March, 2011, the August 2, 2010 order of the Workers' Compensation Appeal Board is affirmed.