IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Afrim Betsa,                                    :
                          Petitioner            :
                                                :
        v.                                      :    No. 1269 C.D. 2018
                                                :    SUBMITTED:  March 22, 2019
Workers' Compensation Appeal                    :
Board (Rehrig Pacific Company),                 :
                          Respondent            :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                       FILED:  May 13, 2019


        Afrim Betsa (Claimant) petitions for review from an order of the Workers'

Compensation Appeal Board (Board) affirming the decision of a Workers'

Compensation Judge (WCJ).[1]  The WCJ denied Claimant's two review petitions and

granted the suspension petition of Rehrig Pacific Company (Employer).  After

thorough review, we affirm the Board's order.

## I. Background

### A. Bases of Review and Suspension Petitions

        Employer provides on-site pallet sorting and recycling services in a Walmart

warehouse.  Claimant sustained a work-related injury in August 2015 when the

forklift he was operating was struck from behind by another forklift.  Notes of

---

[1] Claimant's brief incorrectly quotes the "Order in Question" as having reversed the WCJ's decision.  *See* Pet'r's Br. at 6.

Testimony (N.T.), 1/31/17, at 8. Employer accepted a work-related injury described as a low back strain. Finding of Fact (F.F.) No. 1. Claimant did not return to work thereafter. N.T., 1/31/17, at 11.

Claimant underwent a number of diagnostic studies. CT and MRI scans of the thoracic and lumbar spine, an EMG, and a nerve conduction study all showed no abnormalities. F.F. No. 5. An initial MRI of Claimant's hips showed evidence of mild bursitis. *Id.* A later MRI was negative, indicating the bursitis had resolved, although that MRI revealed mild osteoarthritis in the left hip. *Id.* The right hip appeared normal. *Id.*

In March 2016, Employer notified Claimant that it was offering him a full time position, 40 hours and 4 days per week, performing light-duty work with no loss of earnings. *See* R.R. at 131a. Claimant would work in a small office in Employer's work area, located in the Walmart warehouse. He would need to walk about 300 yards, roughly 7 minutes, from the warehouse entrance to Employer's office at the beginning and end of each shift, as well as walking about 50 yards from the office to the lunchroom or restroom, if needed. Reproduced Record (R.R.) at 129a-30a, 150a-51a. The work itself was mainly sedentary, with walks of about 50 yards approximately once every hour. R.R. at 140a. Otherwise, Claimant could sit or stand as needed. R.R. at 157a-58a, 164a-65a. The work was within the restrictions provided to Employer based on an independent medical examination (IME) of Claimant. R.R. at 130a-32a.

On the date he was to begin work, Claimant appeared at 5:30 a.m. for the start of his scheduled shift. N.T., 1/31/17, at 16; R.R. at 142a. Claimant sat at the desk of Employer's on-site manager, Sean Brooks (Brooks), until Brooks arrived at 9:00 a.m.; Claimant then informed Brooks that he was not feeling well and wanted to go

home.  R.R. at 141a-42a.  *See also* N.T., 1/31/17, at 16.  Claimant went home without attempting to perform any work.  N.T., 1/31/17, at 25; R.R. at 142a-43a.  He did not return.  N.T., 1/31/17, at 23.

In May 2016, Employer again offered Claimant full time work with no loss of earnings.  This time, Employer offered Claimant the same office position, but without the hourly walking requirement.  R.R. at 148a, 163a-64a.  Employer also offered to allow Claimant to work 8-hour shifts instead of the normal 10-hour shifts.  R.R. at 163a-65a.  Claimant did not return to work after receiving the second job offer from Employer.  R.R. at 149a-50a.

Employer filed a suspension petition alleging that Claimant failed to respond in good faith to the two job offers.

Third and fourth MRIs performed in July 2016, almost a year after the work-related injury, showed bilateral labral tears[2] in Claimant's hips.  R.R. at 225a.  Claimant underwent surgery in September 2016 to repair his left labral tear.  N.T., 1/31/17, at 17; R.R. at 101a-02a.  He contends the labral tears were additional work-related injuries.  Claimant filed two review petitions seeking to change the description of his work-related injury to include labral tears of both hips.

### B. WCJ's Credibility Determinations

Claimant offered deposition testimony from two medical experts.  Allister Williams, M.D. (Claimant's Orthopedist) testified Claimant has been unable to work since his work-related injury. R.R. at 66a.  However, Claimant's Orthopedist also stated he had "no expertise" to determine whether Claimant was being dramatic in describing his medical condition and physical capabilities.  R.R. at 70a.

---

[2] The labrum is the ring of cartilage surrounding the outside rim of the hip joint socket. *See* Mayo Clinic, "Hip labral tear," https://www.mayoclinic.org/diseases-conditions/hip-labral-tear/symptoms-causes/syc-20354873 (last visited May 2, 2019).

Claimant's other medical expert, Brett Gibson, M.D. (Claimant's Surgeon), opined that the labral tears related to Claimant's work-related injury. He suggested the tears did not show on prior MRIs because the imaging on the third and fourth MRIs included contrast injections, increasing the accuracy of detecting labral tears. R.R. at 99a. However, he conceded that the MRIs did not show whether the labral tears were traumatic in origin. R.R. at 113a. Further, he acknowledged that labral tears occur in the absence of any trauma and can result from wear and tear or deterioration. R.R. at 111a-12a. Claimant's Surgeon could not offer an opinion on whether Claimant was capable of performing the job offered by Employer at the time it was offered. R.R. at 110a. Moreover, his opinion that Claimant could not work was based on Claimant's own subjective complaints of pain. R.R. at 115a-16a.

In January 2016, Claimant underwent an IME by John Petolillo, Jr., D.O. (Employer's Medical Expert), a board-certified orthopedic surgeon with a concentration in hip surgery.[3] R.R. at 185a-86a, 189a. Employer's Medical Expert concluded Claimant's work-related injuries included lumbar sprain and strain, bilateral hip strain, and mild bursitis in the hips. R.R. at 196a-97a. Later, after reviewing the third and fourth MRIs and notes from Claimant's surgery, Employer's Medical Expert updated his report to note the labral tears. He opined they were not

---

[3] Claimant mischaracterizes Employer's Medical Expert as a general orthopedist with no hip expertise or experience. Pet'r's Br. at 13 & n.2. This representation is directly contrary to the record evidence cited by Claimant himself, which clearly indicates one of the concentrations of Employer's Medical Expert *is in hip surgery*. *See* Reproduced Record (R.R.) at 185a-86a. The *curriculum vitae* of Employer's Medical Expert in the supporting record likewise lists a concentration in hip surgery. R.R. at 217a. Thus, the WCJ's finding of fact in this regard was not only within his discretion, but indisputably correct. S*ee* F.F. No. 5. Claimant's criticism of the WCJ's supposed failure to address the purported "lack of expertise and experience" of Employer's Medical Expert in relation to hip injuries, Pet'r's Br. at 13 n.2, is not well taken.

Moreover, a physician is competent to testify concerning a specialized area of medicine even if he is not a specialist in that field. *Marriott Corp. v. Workers' Comp. Appeal Bd. (Knechtel)*, 837 A.2d 623 (Pa. Cmwlth. 2003).

related to the work injury. R.R. at 225a-26a. He based that opinion on the absence of prior medical documentation showing labral tears, the absence of related complaints by Claimant during the IME, and his conclusion that "[b]ilateral findings would be very unusual as a result of traumatic injuries, especially … when [Claimant] was wearing a lap belt at the time of the injury." R.R. at 225a.

Employer's Medical Expert opined that Claimant's work-related injuries had resolved sufficiently that Claimant was capable of returning to work with some restrictions. R.R. at 197a-98a. Specifically, Claimant could perform sedentary work, along with walking and standing for not more than three hours per day. *Id*.

Brooks testified he saw Claimant and his family at a local mall in April 2016 and observed Claimant walking with no limp. R.R. at 152a. Claimant asserted that he was having trouble walking during the same time period. R.R. at 61a. However, the WCJ found Brooks credible. F.F. No. 13.

The WCJ found Claimant not credible. F.F. No. 13. The WCJ also found both of Claimant's medical experts less credible than Employer's Medical Expert, in that they "relied on Claimant's subjective complaints and embellished statements in reaching their opinions."[4] F.F. No. 14. *See*, *e.g.*, R.R. at 60a (Claimant's Orthopedist was unable to explain Claimant's continuing pain complaints, but recommended pain management treatment). The WCJ found that on the day Claimant was scheduled to return to work, he left the workplace "for reasons that were unrelated to his work injury." F.F. No. 15. The WCJ also declined to find that the labral tears in Claimant's hips resulted from his work injury. F.F. No. 16. The

---

[4] Claimant alleged, for example, that after the forklift incident, he had to "crawl" to the warehouse office and call an ambulance himself, that his plight was ignored for 50 minutes while he begged for help and waited for a golf cart from Walmart to transport him out of the warehouse, and that upon the golf cart's arrival, Walmart security guards "slammed" him onto the cart, "assaulted" him, and "threw" him out of the facility. N.T., 1/31/17, at 8-10, 21.

5

WCJ concluded Claimant failed to respond in good faith to Employer's job offers. Concl. of Law No. 2. Therefore, the WCJ found Claimant failed to prove any work injury other than lumbar strain and sprain and hip strain and sprain.[5] Concl. of Law No. 3.

## II. Issue

On appeal,[6] Claimant argues the WCJ's decision was not supported by substantial evidence. He also asserts the WCJ's decision was not well reasoned. Claimant therefore contends the Board erred by affirming the WCJ's order.

## III. Discussion

Claimant bore the burden of proof in the review petitions. *Jeanes Hosp. v. Workers' Comp. Appeal Bd. (Hass)*, 872 A.2d 159 (Pa. 2005), *overruled in part on other grounds by Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577 (Pa. 2009). Specifically, because Claimant sought to amend the description of his accepted injury to add an injury not previously recognized, he was required to prove the additional injury was work-related. *Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699 (Pa. Cmwlth. 2013). To prevail, Claimant had to prove the original description of his injury was materially incorrect. *Id.*

Employer bore the burden of proof in the suspension petition. To prevail in the circumstances of this case, Employer first had to demonstrate, through medical evidence, that Claimant recovered some ability to work. *See Vaughn v. Workers'*

---

[5] Apparently, neither a back sprain nor a hip sprain or strain was part of the original accepted injury. However, Claimant did not seek to add such injuries to the accepted injury.

[6] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.)*, 176 A.3d 1045 (Pa. Cmwlth.) (*en banc*), *appeal denied*, 189 A.3d 385 (Pa. 2018).

*Comp. Appeal Bd. (Carrara Steel Erectors)*, 19 A.3d 545 (Pa. Cmwlth. 2011) (citing *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 532 A.2d 374 (Pa. 1987), *superseded in part by statute as stated in Brennan v. Workers' Comp. Appeal Bd. (Com. of Pa.)* (Pa. Cmwlth., No. 270 C.D. 2016, filed December 21, 2016), 2016 Pa. Commw. Unpub. LEXIS 869 (unreported)).[7]  Employer then had to show an offer of employment within Claimant's medical clearance.  *Id.*  Once Employer met its burden of proof, Claimant had to demonstrate that he followed through in good faith on the available employment.  *Id.*; *see also Cerro Metal Prods. v. Workers' Comp. Appeal Bd. (Shawley)*, 762 A.2d 421 (Pa. Cmwlth. 2000).

The parties disagree whether Claimant was capable of performing the jobs offered by Employer.  However, their main dispute is the overarching issue of whether Claimant's labral tears were work-related.

In support of his claim petitions, Claimant argues he sustained bilateral labral tears in his hips as part of his work-related injury, and that as a result he is totally unable to work.  By contrast, Employer contends the labral tears that first appeared in the third and fourth MRI studies a year later were unrelated to the work injury.

In support of its suspension petition, Employer asserts that Claimant is capable of returning to full time work at his prior pay rate, and that Employer offered twice to return Claimant to work in a position that would accommodate his current work restrictions.  Claimant counters that both offers were outside his physical

---

[7] Specifically, *Kachinski* was superseded in part by a 1996 amendment to Section 306(b) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 726, *as amended*, 77 P.S. § 512. However, *Kachinski* is still applicable where an employer bases its modification petition on the employer's own offer of a specific job. *Brennan v. Workers' Comp. Appeal Bd. (Com. of Pa.)* (Pa. Cmwlth., No. 270 C.D. 2016, filed December 21, 2016), 2016 Pa. Commw. Unpub. LEXIS 869 (unreported) (citing *S. Hills Health Sys. v. Workers' Comp. Appeal Bd. (Kiefer)*, 806 A.2d 962 (Pa. Cmwlth. 2002)).

capabilities based on his hip injuries. Thus, whether the labral tears in Claimant's hips are work-related is also a pivotal issue in the suspension petition.

Indeed, the WCJ's finding that the labral tears were not work-related was dispositive of the entire matter, as Employer has no workers' compensation obligation regarding non-work injuries. Accordingly, the evidence relating to both the review and suspension petitions focused primarily on whether Claimant's alleged hip injury was work-related.

Claimant argues the WCJ's decision was in error for two reasons. First, he contends the decision lacked substantial evidence. Second, he maintains the decision was not well reasoned. We address each argument in turn.

### A. Substantial Evidence

The WCJ is the ultimate finder of fact in workers' compensation cases, with exclusive province over determinations of credibility and weight of the evidence. *Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.)*, 176 A.3d 1045 (Pa. Cmwlth.) (*en banc*), *appeal denied*, 189 A.3d 385 (Pa. 2018). The WCJ may accept or reject the testimony of any witness, including an expert, in whole or in part. *Id.* A WCJ's acceptance of one medical expert's opinion over that of another does not constitute reversible error. *Jenkins v. Workmen's Comp. Appeal Bd. (Woodville State Hosp.)*, 677 A.2d 1288 (Pa. Cmwlth. 1996). We are bound by the WCJ's credibility determinations. *Furnari v. Workers' Comp. Appeal Bd. (Temple Inland)*, 90 A.3d 53 (Pa. Cmwlth. 2014); *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233 (Pa. Cmwlth. 2013).

In determining whether the WCJ's decision was supported by substantial evidence, we view the evidence in the light most favorable to the prevailing party and give that party the benefit of all inferences reasonably deducible from the

evidence. *Grimm.* This Court's inquiry is *not* whether the record contains evidence that would support findings other than those made by the WCJ, but whether there is substantial evidence to support the findings actually made. *Id.* If the record in its entirety contains evidence that a reasonable person would find sufficient to support the WCJ's findings, we must uphold those findings on appeal. *Id.*

Here, contrary to *Furnari* and *A & J Builders*, Claimant's argument focuses on evidence he contends the WCJ should have credited but did not, rather than on the sufficiency of the evidence the WCJ did credit. However, our review demonstrates that the record contains substantial evidence in support of the WCJ's decision. As detailed above, that evidence includes numerous diagnostic studies with negative results, credited testimony from Brooks that Claimant was able to walk without difficulty in April 2016, the opinion of Employer's Medical Expert that Claimant's labral tears were not related to his work injury, and the admission of Claimant's Surgeon that labral tears can occur without trauma, based on wear and tear or deterioration.

As set forth above, our inquiry on appeal is not whether other evidence in the record might have supported a different decision, but whether there was substantial evidence supporting the decision the WCJ actually made. *Furnari*; *A & J Builders*. Because substantial evidence supports the WCJ's findings of fact, we will not disturb those findings on appeal.

**B. Reasoned Decision**

"[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006) (citation omitted). To satisfy the reasoned decision requirements of

9

Section 422(a) of the Workers' Compensation Act (Act), 77 P.S. § 834, a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and the reasons for accepting it. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003); *Dorsey*. When conflicting evidence is presented, the WCJ must adequately explain the reason for rejecting or discrediting competent evidence. *Daniels*. The WCJ may not reject uncontroverted evidence without reason or for an irrational reason, but must identify such evidence and adequately explain the reasons for its rejection. *Id.*

When the WCJ bases a credibility determination on the witness's demeanor, no further explanation of the WCJ's reasoning is required. *See Daniels*. To allow effective appellate review where testimony is presented by deposition, the WCJ must articulate an objective basis for a credibility determination. *Dorsey*. We will not second-guess the WCJ's reasons for credibility determinations; we will uphold those determinations unless they are arbitrary or capricious. *Id.* Moreover, an adverse credibility determination does not constitute a capricious disregard of the rejected testimony. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.–Fairless Works)*, 862 A.2d 137 (Pa. 2004).

Here, contrary to Claimant's assertions, the WCJ articulated clear objective bases for his credibility determinations. The WCJ found Claimant not credible based on both his testimony and demeanor, as well as conflicts between his testimony and that of Brooks, whom the WCJ found credible. F.F. No. 13.

Having found Claimant not credible, the WCJ appropriately rejected the testimony of Claimant's medical experts because they based their opinions on subjective statements by Claimant that were not credible. *See Jensen v. Workers' Comp. Appeal Bd. (Pleasant Valley Manor)* (Pa. Cmwlth., No. 23 C.D. 2016, filed

10

October 31, 2016), 2016 Pa. Commw. Unpub. LEXIS 756 (unreported). In addition, the opinions of Claimant's medical experts conflicted with the opinion of Employer's Medical Expert, whom the WCJ found credible, observing that Employer's Medical Expert relied on objective studies rather than Claimant's subjective complaints. *See* F.F. Nos. 5, 14; R.R. at 191a-201a, 206a-08a, 210a.

The WCJ's decision satisfied the reasoned decision requirements of Section 422(a) of the Act. Therefore, we will not disturb the decision on appeal.

### IV. Conclusion

For the above reasons, we discern no error or abuse of discretion in the WCJ's denial of Claimant's review petition. We likewise find no error or abuse of discretion by the WCJ in granting Employer's suspension petition. Therefore, the Board correctly affirmed the WCJ's decision. We affirm the Board's order.

_____
ELLEN CEISLER, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Afrim Betsa,                        :
           Petitioner           :
                                    :
         v.                      :   No. 1269 C.D. 2018
                                    :
Workers' Compensation Appeal     :
Board (Rehrig Pacific Company),    :
           Respondent       :

# **O R D E R**

AND NOW, this 13th day of May, 2019, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____

ELLEN CEISLER, Judge